LAWRENCE ROBERTS, ARBITRATOR
1046 Kimberly Drive
Uniontown, PA  15401
PH: (724) 366-4907

Scott Kamins, Esquire
for Economy Linen and Towel Service
Offit Kurman
8171 Maple lawn Blvd., Suite 200
Maple Lawn, MD  20759

and

John R. Doll
Doll, Johnson & Ford
for Teamsters LU 637
111 West First Street, Suite 1100
Dayton, OH  45402

RE: Arbitrators Decision and Invoice
Economy Linen & Towel Service vs Teamsters LU 637
FMCS Case No. 16-51245
Pay Rate-Transportation Grievance

September 18, 2016

Dear sir and/or Madam:

Enclosed are two copies of my decision and award for the above cited matter.  This letter will also serve as my invoice for services rendered.  My tax ID # is 25-1814488.

My charges for this case are:

| | |
|---|---|
| Travel, hearing, study and preparation time | $8,250.00 |
| Food | $    65.00 |
| Lodging | $  109.79 |
| POV (360 miles at .54) | $  194.40 |
| Tolls (1.09 x 4 + 1.46 x 4) | $   10.20 |

The total charge for the case is $8,629.39

The Employer's share is $4,314.69.

The Union's share is $4,314.69.

Your assistance in having payment made will be appreciated.

Thanks again for choosing me to serve as your arbitrator.

Respectfully,

*[signature]*

Lawrence Roberts
Arbitrator

```
---------------------------------
In the Matter of the Arbitration  *
                                  *
between:                          *   Grievant: Class Action
                                  *
Economy Linen and Towel Service   *   Hearing Location: Zanesville OH
Of Zanesville                     *
                                  *   FMCS Case No: 16-51245
and                               *
                                  *
The International Brotherhood of  *
Teamsters                         *
Teamsters Local Union 637         *
                                  *
---------------------------------
```

BEFORE: Lawrence Roberts, Arbitrator

APPEARANCES:

    For the Employer: Scott Kamins, Esq.

    For the Union: John R. Doll, Esq.

Place of Hearing: Zanesville, OH

Date of Hearing: June 15, 2016

Date of Award: September 18, 2016

Relevant Contract Provision: Article 3 – Management Rights
Article 6 – Hours of Work and Overtime

Type of Grievance: Contract

Award Summary:

    The instant grievance is sustained in accord with the Discussion and Findings below. The undersigned will retain jurisdiction for a period of ninety days to ensure only the monetary portion of the Award is satisfied.

_____
Lawrence Roberts, Arbitrator

**SUBMISSION:**

This matter came to be Arbitrated pursuant to the terms of the Wage Agreement between Economy Linen and Towel Service of Zanesville, Ohio and the International Brotherhood of Teamsters, Local Union 637, the Parties having failed to resolve this matter prior to the arbitral proceedings. The hearing in this cause was conducted on 16 June 2016 in Zanesville, OH. Testimony and evidence were received from both parties. A transcriber was used. The Arbitrator made a record of the hearing by use of a tape recorder and personal notes. The Arbitrator is assigned to this matter in accordance with the Wage Agreement.

**OPINION**

**BACKGROUND AND FACTS:**

This matter involves a class action grievance filed on behalf of employees working at Economy Linen and Towel Service of Zanesville, Ohio. Bargaining unit members are represented by the International Brotherhood of Teamsters, Local Union 637.

Economy Linen and Towel Service is a privately owned company engaging in the business of leasing and laundering sheets, bedding material, surgical gowns and other similar products to hospitals and medical facilities within the region.

A portion of that business requires round trip transportation of those products from the various facilities to the plant for processing. This is accomplished by tractor trailer combinations which require Class A CDL drivers employed by the Company.

Due to a robust regional economy, the Company has been challenged in successfully recruiting and retaining bargaining unit employees to perform the required Class A CDL tasks to maintain their business.

In the Fall of 2015, Economy Linen was lacking the number of Class A CDL Drivers to operate their routes on a consistent and efficient basis. And as a result of this driver shortage, Economy Linen opted to engage the services of a subcontractor known as ProDrivers. ProDrivers provides certified drivers on a contract basis. And it was that ProDrivers contract which caused the following grievance to be filed on or about 22 October 2015:

> "Filing this grievance on behalf of all affected under Article 6.08 and any other related articles. Company not honoring pay raise to full time transportation drivers that is making less than temporary and/or part time drivers. Further facts to be presented at time of hearing.
>
> The position of the company is that we did not have temporary drivers. We contracted a service. The wage rate at which they pay their drivers is at their discretion. Our decision is based on Article 3.01 thru 3.04"

The Union alleges in this grievance the subcontracted employees were paid more than bargaining unit members resulting in a violation of the Parties Agreement.

It is the contention of the Employer the Parties Agreement allows such subcontracting and in this instant case, there was no violation of any Article or Section of the Parties Agreement. Management requests the instant grievance be denied in its entirety.

Obviously, the Parties were unable to resolve this dispute during the prior steps of the Parties Grievance and Arbitration Procedure of Article 13.

It was found the dispute was properly processed through the prior steps of the grievance procedure. Therefore, the matter is now before the undersigned for final determination.

At the hearing, the Parties were afforded a fair and full opportunity to present evidence, examine and cross examine witnesses. The record was closed following the timely submission of post hearing briefs submitted by the respective Advocates.

**JOINT EXHIBITS:**

1. Agreement between Economy Linen and Towel Service of Zanesville and The International Brotherhood of Teamsters, Teamsters Local Union 637

2. Grievance Papers

3. Arbitration Request Letter

**UNION'S POSITION:**

In the view of the Union, most of the facts and circumstances relating to this instant grievance are undisputed. And as pointed out by the Union in this matter, the pertinent contractual language in dispute is Article 6, labeled "Hours Of Work And Overtime," specifically Article 6.08 which addresses temporary and/or part-time employees.

The Union contends the part-time/temporary employees hired in October 2015 and being reimbursed at a rate higher than that of full-time Employees of the Employer. The Union points out this resulted in the filing of the instant grievance.

The Union disputes the Employer position that temporary employees were not hired, instead, Management claims that a temporary service was contracted.

As argued by the Union, Economy Linen and Towel Service and ProDrivers were joint Employers of these Employees. The Union insists that regardless of the Company's position in this matter, those contracted drivers were directed and supervised by Economy Linen and Towel Service.

As a remedy, the Union requests reimbursement between the bargained for pay rate of those bargaining unit drivers and the greater wage that was received by the contracted drivers, in this case, that of ProDrivers.

**EMPLOYER'S POSITION:**

It is the position of the Employer that they have not violated the terms and conditions of the Wage Agreement.

According to Management, most recently, other new companies have entered this metropolitan area thus creating a shortage of qualified truck drivers. And as pointed out by Management, they have been challenged in hiring and retaining qualified drivers over the past several years.

Furthermore, it is the position of the Employer that many efforts have been made by them to hire and retain qualified drivers. It was pointed out by management that it is impossible to operate their business with an insufficient number of qualified truck drivers to complete the deliveries.

Management also mentions that not a single delivery has ever been missed since the inception of this company. The Employer argues it is paramount to maintain this record in order for this Employer to continue its business successfully

According to the Employer, the subcontracting that occurred in this case was a matter of last resort. Management claims it is their inherent right per Article 3 to subcontract this work.

Furthermore, the Employer claims that any and all wages and benefits paid to the subcontracted drivers was made by ProDrivers and not Economy Linen and Towel. In fact, according to the Employer, Economy Linen and Towel had no personal interaction at all with the sub-contracted drivers.

It is the argument of the Company that Article 3 of the Agreement allows management to subcontract and in this specific case, that is exactly what was done. According to the Employer's claim, the subcontractor in this case was paid $30 and some change per hour and Economy Linen and Towel Service has no idea how much the individual drivers of the subcontractor were paid.

Management also insists the Union is unable to identify the exact wages paid to the subcontractor. This, according to the Employer makes the Union's entire case in chief nothing more than hearsay.

The Employer claims the work at issue was not performed by temporary Employees, instead, an emergency relief service provided by a sub-contractor. Furthermore, the Employer insists the remedy requested by the Union in this matter is inappropriate.

And on that basis, the Employer requests the instant grievances be denied.


**THE ISSUE:**

Whether or not the Employer violated the Parties Agreement by hiring subcontractors at a wage rate higher than that of bargaining units Employees? If so, what shall the remedy be?


**PERTINENT CONTRACT PROVISIONS:**

## ARTICLE 3
## Management Rights

# Article 6
# Hours of Work and Overtime

**DISCUSSION AND FINDINGS:**

Both Parties submitted formidable arguments and contentions in support of their respective position. Furthermore, the same also submitted other authority in their attempt to gain support of their respective position in this matter. However, the undersigned would like to point out that Article 14.05 of this Agreement, as well as most other labor agreements, limits the undersigns authority to the four corners of the bargained for language.

Instead of any other outside authority, the unambiguous language of this Wage Agreement provides resolution to the issue at hand. The determination of this issue is found internally within the Parties own Wage Agreement.

In that light, the controlling language in this dispute focuses on Articles 3, Management Rights and Article 6, Hours of Work and Overtime. I would like to first point out I exited this hearing with a full understanding of the respective positions of the Parties. While other Opinions and arbitral authority were carefully reviewed, there were no submissions made by either Party on point with this very specific issue.

The bargained for language of this Agreement is truly unique to this very specific venue. And my findings in this case was derived entirely from within the language of this Wage Agreement.

In this case, there was a lack of regular bargaining unit Employees to satisfy the workload beginning in the last quarter of 2015. This caused the Employer to enter into a "Service Agreement" with another company known as "ProDrivers" to complement their regular work force during a period of increased service demand. The facts of this case were not in dispute. The pay rate of those "Service Agreement" drivers became the contention of this instant grievance.

The Union contends that Economy Linen and Towel Service was a Joint Employer with ProDrivers during the time period the work force was complemented by this outside source of Employees. And in summation the Employer argues the ProDrivers supplement was neither a temporary or part-time employee of Economy Linen and Towel.

I respectfully disagree with that Employer position in this matter. My reasoning is as follows.

The contractual component controlling my decision is the last sentence found in Article 6.08 which states that **"In no event will a temporary or part-time employee be hired at or given a higher raise than a full-time employee."**

In Article 2.02 a full time Employee is defined, however, a temporary or part-time employee was left without specific contractual definition other than to exclude anyone other than a full-time employee from the bargained for agreement. And that unambiguous definition of a full-time employee becomes controlling in this matter. There is no language found within the same Agreement specifically defining either a temporary or part-time employee in a similar context.

Article 3.02 of the Agreement unambiguously provides the Employer the exclusive right to subcontract. That managerial right seems unimpeded until one reaches the Hours of Work and Overtime provision.

Article 6.11 does define Temporary ("on-call") employees as **"individuals who are on call to work when regular full-time employees are not available to work or to augment the work force in peak periods."** This is a very broad definition and in my considered opinion defines precisely the subcontractors at issue in this matter.

The literal meaning of "temporary" within the negotiated language becomes the accepted definition, as the Parties Agreement lacks a more defined description. Emphasis of that point is made by the fact the chief negotiators duly noted via Article 2.02 a very specific definition providing that **"whenever the words "employee" or "employees" are used in this Agreement, they shall be deemed to mean full-time employees of the Company in the bargaining unit, as defined in Section 2.01."** And that same Section clearly excludes temporary and part time Employees from the "provisions of this Agreement." Had the negotiators desired to further characterize either a temporary or part time employee, they could have easily done so. This was quite evident by their vivid description of a full-time employee. Therefore, the term temporary or part time cannot be accepted at anything other than face value.

And in this matter ProDriver employees cannot be labeled by any other classification other than that of "temporary." Any ProDriver was something other than a full-time Employee and in this matter clearly falls under the jurisdiction of Article 6.08 as mentioned above. That is the literal meaning and there is simply no other language in this Agreement which distinguishes a subcontracted employee from a temporary employee. The negotiators were meticulous with their unambiguous language in

describing a full time employee yet clearly failed to offer any precise definition for any other status.

The Parties clearly agreed to allow subcontracting, however, failed to specifically draw a distinction between a subcontracted employee and a temporary employee. The negotiators could have easily have done so. However, the absence of any language in that regard makes it clear, at the face value of the Agreement, that a subcontractor and a temporary employee are in fact, one in the same. And Article 6.08 is unambiguous, in that, it even leads off with the phrase "in no event." And in my view, that particular phraseology is definitive and without exception.

To further bolster that reasoning, the "Driver Supervision" as defined in the ProDrivers Service Agreement with Economy Linen and Towel Service seems to be more akin to that of a temporary employee rather than a subcontractor. The aforementioned Agreement states that **"Drivers on assignment shall be borrowed servants of Customer and will be under their control and daily supervision. Customer shall have the sole right to control the manner by which the work is performed including the direction, training, control, road testing and supervision of the driver while operating vehicles and related equipment. Customer shall control and direct the origin,**

**destinations, routing and scheduling.**" And with that language, it became quite apparent the "subcontracted employee" was under the total control of Economy Linen and Towel Service supervision. ProDrivers, in this instance was more akin to a conduit, an agency, offering employment to a group of individuals with a special skill set rather than acting as the employer.

Regardless of one's specific definition of "borrowed servants" found in that Service Agreement, I am of the considered opinion in this matter the term "temporary" certainly provides the only contractual description of ProDrivers in this specific case. By the Parties Agreement, the literal meaning of temporary is something other than a full-time Employee of Economy Linen and Towel Service. And in this case, that logic certainly applies to the ProDrivers Company that provided temporary employees to the Economy Linen and Towel Service.

The Employer in their post hearing brief argued the term "joint employer" is certainly non-applicable in this case. That may very well be so. However, the fact of the matter is, the work at issue has been determined to have been performed by temporary Employees. However else those same Employees may be labeled is irrelevant. It was clear the purpose of these Employees was to "augment the work force in peak periods" as

mentioned in Article 6.11 above. The Agreement failed in making any other distinction or separation between a temporary and a subcontracted employee. Accordingly, the undersigned is of the considered opinion the unambiguous language cannot be interpreted to represent anything other than its literal meaning.

For all the above reasoning, I am of the considered opinion the Employer in this instance violated Article 6.08 by paying ProDriver subcontractors a higher wage than bargaining unit Employees. And as a remedy, the Employer shall make whole affected bargaining unit Employees, the difference between twenty dollars ($20.00) and their regular rate of pay during all time ProDrivers performed work commencing 6 October 2015. Should the Parties be unable to agree on proper monetary disbursement, the undersigned will maintain jurisdiction, for settlement purposes only, for a period of ninety (90) days.

The Union also requested the Employer be ordered to raise the rate of pay to $20.00 for the remainder of this Wage Agreement which I find inappropriate. As previously mentioned, it is not within the authority of any arbitrator to change any of the terms and conditions of Parties Agreement, instead, only interpret the language as written.

In a closing note, I would like to mention I certainly recognize the dilemma of the Employer in this matter. However, the language of Article 3 does not supersede the unambiguous language of Article 6.08. The aggressive argument made by the Employer Advocate was simply unable to overcome the language of the Parties Agreement. That subcontracted Employee, for lack of another contractual definition, could not be considered anything other than a temporary employee as described in Article 6.08.

THE REMAINDER OF THIS PAGE IS LEFT BLANK INTENTIONALLY

## AWARD

The grievance is sustained in accord with the above.

Dated: September 18, 2016
Fayette County PA